**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sonja L. Lewis, ) | CIV-06-1496-PHX-SMM |
| ) | |
| Plaintiff, ) | **MEMORANDUM OF DECISION** |
| ) | **AND ORDER** |
| vs. ) | |
| ) | |
| ) | |
| Michael J. Astrue, Commissioner, Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Pending before the Court are Plaintiff Sonja Lewis' Motion for Summary Judgment (Doc. 11) and Defendant Michael J. Astrue[1], Commissioner of the Social Security Administration's, Cross-Motion for Summary Judgment (Doc. 15). After consideration of the arguments advanced by the parties, the Court finds the following.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits with the Social Security Administration (the "SSA") on July 3, 2003, alleging that her disability commenced on May 1, 2003[2] due to a back condition. (Administrative Record ("AR") at 64). Plaintiff's application

---

[1]Under Rule 25 (d)(1) of the Federal Rules of Civil Procedure, since Michael J. Astrue became the Commissioner of Social Security on February 12, 2007 he is properly substituted for Commissioner Jo Anne B. Barnhart as the defendant.

[2]The decision of the ALJ cites the alleged onset date as May 1, 2002 rather than the May 1, 2003 date alleged by Plaintiff (AR at 31, 64). It is unclear if this distinction is a

was initially denied on October 1, 2003, at which time she moved for reconsideration. (AR at 41- 44.) Thereafter, the Agency affirmed its denial. (AR at 47- 49.) Subsequently, Plaintiff requested a hearing before an Administrative Law Judge (the "ALJ"), which was held on June 20, 2005. (AR at 269.) On July 25, 2005, the ALJ, Michael J. Cianci, Jr., ruled that Plaintiff was not disabled under the law, and therefore not entitled to receive disability insurance benefits[3]. (AR at 37.) In so finding, the ALJ determined that although Plaintiff's "back disorder, high blood pressure, [and] mild obesity are considered severe, based on the requirements in Regulations 20 CFR § 404.1520(c), the [P]laintiff [retains] the residual functional capacity[4] (RFC) to perform light work". (AR at 33.) The ALJ also found that Plaintiff was not precluded from performing her past relevant work as a health coordinator, phlebotomist, and medical secretary. (AR at 36.) On July 25, 2005, Plaintiff requested agency review of the ALJ's decision. (AR at 5.) On April 6, 2006, the Appeals Council denied Plaintiff's request for review of the ALJ's determination, rendering the ALJ's decision the Commissioner's final determination[5]. (AR at 5.) Plaintiff now seeks judicial review of the ALJ's determination pursuant to 42 U.S.C. § 405 (g).

---

mistake.

[3]Claims of disability are evaluated under a five-step procedure under 20 C.F.R. §404.1520. This case was resolved at step four where the Secretary must determine whether the Plaintiff retains sufficient residual capacity to perform her past work. The five-step process is provided in the ALJ's decision. (AR at 32.)

[4]"Residual functional capacity" is defined as the maximum individual can do while considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. 20 C.F.R. §404.1545. In making this determination, the Plaintiff's symptoms, objective medical evidence, and medical opinions are considered. This determination also takes into account anything provided under 20 C.F.R. §404.1527 and 20 C.F.R. §404.1529 that is applicable to the determination.

[5]Although the Appeals Council "declined to review" the ALJ's decision, it reached its decision after considering the case on the merits; examining the entire record, including the additional material; and concluding that the ALJ's decision was proper. The Appeals Council cited that the additional material was repetitive and failed to "provide a basis for changing the hearing decision." (AR at 6.)

Background Regarding ALJ's Determination

Plaintiff is a fifty-seven year old individual with a high school education. Plaintiff's past work experience includes employment as a health coordinator, phlebotomist, and medical secretary. Under 20 CFR § 404.1520, the ALJ determined that Plaintiff's earnings from her medical secretary work in mid 2003 did not demonstrate the performance of substantial gainful activity[6]. The ALJ also found that the medical evidence of Plaintiff's impairments were *severe* within the meaning of the regulations, but not *severe* enough to meet or medically equal, singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

In determining Plaintiff's RFC, the ALJ considered the following evidence: Plaintiff was treated for back pain from May to June of 2003, with the indication of improvement in June. (AR at 33.) In July of 2003, Raul Romero, M.D. concluded that Plaintiff could lift and/or carry less than ten pounds, stand and/or walk less than two hours in a workday, and could sit for only twenty minutes in an eight hour day. This assessment was for a period from July 27, 2003 to January 27, 2004. Dr. Romero indicated that he had not seen Plaintiff since June of 2003.

In September of 2003, Plaintiff was examined by Malcolm McPhee, M.D. The results of the examination found a normal gait and the ability to tandem walk. Dr. McPhee concluded that Plaintiff could lift fifty pounds occasionally, twenty-five pounds frequently, sit for six hours in an eight hour work day, and stand or walk six hours each. He further opined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch or crawl, and was unlimited in use of her upper extremities. A radiological exam of the lumbosacral spine was normal.

---

[6] 20 C.F.R. §404.1572 defines substantial work activity as work that involves doing significant physical or mental activities. Work can be substantial even if done on a part time basis or if performed for less money or less work responsibility than that of previous employment. Gainful work activity is the kind of work usually done for pay or profit, whether or not a profit is realized. (AR at 32.)

In September 2003, a Disability Determination Services' (DDS) RFC evaluation indicated that Plaintiff had low back pain, however, Plaintiff maintained the ability to lift and/or carry fifty pounds. The evaluation also indicated that Plaintiff could stand and/or walk for six hours and sit for six hours, but that she had occasional postural limitations.

In December of 2003, another DDS assessment had similar results, but indicated no postural limitations. In July 2003, Plaintiff was treated by Vincent Salazar-Calderon, M.D. for intermittent low back pain. There was no focal weakness, numbness, or tingling in any extremity. There was normal range of motion of the neck and a normal sensory examination. Her gait was normal, she could tiptoe, tandem walk, squat, and hop on either leg. Dr. Salazar-Calderon saw Plaintiff again in September 2003, and October 2003. Plaintiff then had physical therapy, and an October MRI of the lumbar spine was normal. Dr. Salazar-Calderon saw Plaintiff again in January 2004 when Plaintiff requested epidural injections because of reported chronic intermittent pain. In March 2004, Plaintiff was given medication, and in May 2004, Plaintiff said she could not stand or sit for long periods of time, claiming the pain radiated down her thigh. Plaintiff's physical examination was unchanged.

Notes on rehabilitation at NovaCare Rehabilitation from September 2003 to December 2003 were for low back pain and degenerative disc disease. In October 2003, Plaintiff's sensation was considered to be intact, she was obese, but her prognosis was fair to good. Plaintiff did not express any significant increase in pain, and in December of 2003, Plaintiff was discharged from NovaCare Rehabilitation after seven visits and three cancellations.

In May 2004, Plaintiff saw Pattabi Kalyanam, M.D. Plaintiff reported low back pain, and on a scale of one to ten, Plaintiff reported her pain at a nine. An MRI of the lumbar spine was again normal. Dr. Kalyanam advised Plaintiff to lose weight and provided Caudal epidural injections in June and July of 2004. The RFC evaluation provided by Dr. Kalyanam revealed that Plaintiff could lift and carry less than ten pounds in a workday and stand and/or

1  walk two hours[7], with no limit on sitting other than the requirement to alternate between
2  sitting and standing with occasional kneeling.  From the foregoing evidence, the ALJ found
3  that Plaintiff retains the RFC to lift and/or carry ten pounds frequently and twenty pounds
4  occasionally, to sit for six hours in an eight hour workday, and to stand and/or walk eight
5  hours each.  Plaintiff was unable to climb ladders, ropes or scaffolds; however, she was able
6  to occasionally climb stairs/ramps, and occasionally bend, crouch, crawl, and kneel.

## STANDARD OF REVIEW

In deciding a Social Security appeal, the decision of the Commissioner to deny disability benefits, must be affirmed if it is supported by substantial evidence and if the Commissioner applied the correct legal standards. *See Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). When reviewing factual determinations by the Commissioner, acting through the ALJ, this Court affirms if substantial evidence supports the determination. *See Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003); *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is more than a mere scintilla, but less than a preponderance. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003); *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). Substantial evidence is relevant evidence which a reasonable person might accept as adequate to support a conclusion when considering the entire record. *Howard*, 341 F.3d at 1011; *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the Court may not substitute its judgment for that of the Commissioner.  *See Batson*, 359 F.3d at 1193; *McCartey v. Massanari*, 298 F.3d at 1072, 1075 (9th Cir. 2002). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *See Benton*, 331 F.3d at 1040;

---

[7]The ALJ mischaracterizes the report from Dr. Kalyanam by saying that the Plaintiff can stand and/or walk two hours in an eight hour workday.  In actuality, the report, in the form of a checked box, actually indicates that Plaintiff can stand and/or walk *less* than two hours in an eight-hour workday. (AR at 237).

*Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *See Edlund*, 253 F.3d at 1156; *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Morgan*, 169 F.3d at 599.

## DISCUSSION

Plaintiff raises three arguments pertaining to why the ALJ wrongly denied disability benefits to Plaintiff. First, she contends that the ALJ erred in failing to base the decision on substantial record evidence, claiming that relevant evidence was ignored and/or not developed. Next, Plaintiff argues that the ALJ erred by failing to properly and fully evaluate Plaintiff's credibility. Finally, Plaintiff asserts that the ALJ erred in presenting an incomplete hypothetical to the vocational expert (VE).

**I.     Plaintiff's Credibility**

There is substantial evidence to support the ALJ's finding that Plaintiff's allegations regarding her limitations are not totally credible. When assessing the credibility of a plaintiff, if the ALJ finds the testimony pertaining to the severity of pain and impairments to be unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. Social 42 U.S.C.A. § 423(d)(1)(A). *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir.1991). The ALJ may consider inconsistencies either in claimant's testimony or between her testimony and her conduct, her daily activities, her work record, testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas*, 278 F.3d at 959, 42 U.S.C.A. § 423 (d)(1)(A).

The ALJ found Plaintiff's complaints and alleged limitations inconsistent with the treatment she receives for her impairments. Furthermore, the ALJ found that Plaintiff's daily activities are incongruent with her allegations of impairment. Plaintiff alleges an inability to perform even sedentary unskilled work and many activities of daily living (AR at 35.)

- 6 -

However, the ALJ cites clear and convincing evidence[8] to support his conclusion finding otherwise. For example, Plaintiff does not use an ambulatory device, she exercises, walks, stretches, and is able to sit for approximately one hour. Furthermore, "an ability to perform such activities may be seen as inconsistent with the presence of a condition which would preclude all work activity." *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (substantial evidence supported finding that Plaintiff was capable of performing light work where she had the ability to take care of personal needs, do light housework, and shop). Plaintiff drives, goes shopping, attends church, socializes with her family, and visits her mother in law. (AR at 35.) In addition to Plaintiff's daily activities, the ALJ cites the conservative treatments received by Plaintiff, including pain medication and several epidermal injections as objective evidence against Plaintiff's testimony. (AR at 34.)

If the ALJ's interpretation of Plaintiff's contentions is reasonable and supported by substantial evidence, even where a contrary finding may also be reasonable, it is not the Court's role to second-guess. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court finds that the evidence in the record refutes Plaintiff's claims of disability[9], and further, that the ALJ properly advanced its reasons for discounting Plaintiff's subjective complaints[10].

---

[8]"If there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for rejecting the claimant's testimony must be "clear and convincing" and supported by specific findings" *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

[9]Although Plaintiff contends that the ALJ improperly sites the alleged onset date as May 1, 2002, if in error, it does not leave the ALJ without substantial evidence as to the credibility determination of Plaintiff. *Batson*, 359 F.3d at 1197(error by the ALJ was harmless to the validity of the ALJ's ultimate conclusion); *Burch*, 400 F.3d at 679("A decision of the ALJ will not be reversed for errors that are harmless." (*citing Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir.1990)).

[10]The ALJ has properly considered the conflicts between the medical evidence and the Plaintiff's subjective complaints of disability. See Section I. above.

1 Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence. *Benton*, 331 F.3d at 1035.

## II.     Substantial Record Evidence

Plaintiff contends that relevant evidence was ignored and/or not developed by the ALJ. This Court finds that the ALJ failed to properly consider relevant medical evidence only in regards to Plaintiff's migraine headaches.

### Relevant Medical Evidence

Plaintiff contends that the ALJ did not properly credit her treating physicians. "The opinion[s] of treating physician[s] [are] not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan*, 169 F.3d at 600. Although the treating physician's opinion is given deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion, of an examining physician, if the ALJ makes "findings, setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ has provided substantial evidence and a thorough summary of the facts, demonstrating a conflicting medical record in support of his determination. For example, the ALJ points out that Plaintiff's treating physician Dr. Romero made treatment notes that Plaintiff could not sit for long periods of time and was limited in walking. However, Dr. Romero also noted that Plaintiff's back pain had improved. (AR at 33). Dr. Romero made a determination that Plaintiff could lift and/or carry less than ten pounds, stand/walk less than two hours in a workday, and sit only twenty minutes in an eight hour day (AR at 33). These restrictions were for a period of six months, not within the

1  meaning of a disability[11]. Furthermore, the diagnosis was made one month after Dr. Romero
2  had last seen Plaintiff.

3  The ALJ further notes that Dr. Salazar-Calderon treated Plaintiff for low back pain
4  but contemporaneously found no focal weakness, no numbness or tingling in any extremity,
5  and a normal range of motion of the spine. (AR at 34.) Further, the record indicates that a
6  2003 MRI of the lumbar spine was unchanged. Plaintiff then received epidural injections
7  from Dr. Salazar-Calderon. One year later, Plaintiff stated that she could not stand or sit for
8  a period of time and that she had pain radiating down her thigh, however, her physical
9  examination was unchanged. (AR at 34.)

10  Despite an MRI of the lumbar spine showing normal results, Dr. Kalyanam treated
11  the patient for low back pain after Plaintiff claimed a pain level of a nine out of ten.(AR at
12  34.) Dr. Kalyanam provided epidural injections and concluded that her RFC restricted her
13  to lifting and carrying less than ten pounds in a workday and standing and/or walking less[12]
14  than two hours, however Plaintiff could sit if she periodically alternated between sitting and
15  standing, with the occasional kneeling. (AR at 238.)

16  In September of 2003 Dr. Malcolm McPhee conducted a consultative evaluation,
17  which was corroborated by two DDS RFC evaluations.(AR at 33-34.) Although Dr. McPhee
18  is not a treating physician, the record supports his conclusion. The evaluations by Dr.
19  McPhee and the two DDS employees revealed that Plaintiff could lift *fifty* pounds
20  occasionally, *twenty-five* pounds frequently, sit for six hours in an eight hour work day, and

---

[11] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of *not less than 12 months*. (AR 31.)

[12] The ALJ misstates the RFC evaluation of Dr. Kalyanam. In the ALJ's decision it is stated that Plaintiff could stand and/or walk two hours but Dr. Kalyanam actually marked a box indicating that Plaintiff could stand and/or walk less than two hours. (AR at 237.) This error does not make a difference in the evaluation of the ALJ's substantial evidence because Plaintiff is reduced to light work which allows for alternating between sitting, standing and occasionally kneeling.

1 stand or walk six hours each. Plaintiff was able to occasionally climb, balance, stoop, kneel,
2 crouch or crawl, and was *unlimited* in her use of her upper extremities. Furthermore, a
3 radiological exam of her spine was normal. This determination, supported by the record,
4 substantially supports the ALJ's decision.

5 As Defendant properly concedes, Dr. Romero's August 2005 form opinions were not
6 specifically addressed. (AR at 243-251.) The reports were issued <u>after</u> the Commissioner's
7 decision, therefore they are less persuasive. *Marci v. Chater*, 93 F.3d 540, 544 (9th Cir.
8 1996). Morever, the ALJ permissibly rejected Dr. Romero's form opinions because they were
9 check-off reports which did not contain any explanation for the bases of their conclusions
10 and were brief, conclusory, and inadequately supported by narrative explanation of clinical
11 signs and diagnostic findings. *Thomas*, 278 F.3d at 957. Where the evidence is susceptible
12 to more than one rational interpretation, one of which is in support of the ALJ's decision, the
13 ALJ's conclusion must be upheld. Consequently, in regards to Plaintiff's back pain, the ALJ's
14 RFC determination is upheld. *Id.* at 947.

15 **Plaintiff's Obesity**

16 The Court concludes that the ALJ did in fact consider Plaintiff's obesity in his
17 determination that neither of the listed "severe" impairments were severe enough to meet or
18 medically equal, either singly or in combination, one of the impairments listed in Appendix
19 1, Subpart P, Regulations No. 4. (AR at 33.) Agency ruling SSR 96-8p provides that [i]n
20 assessing the RFC, the adjudicator must consider limitations and restrictions imposed by all
21 of an individual's impairments, even those that are not "severe." While a "not severe"
22 impairment may not significantly limit an individual's ability to do basic work activities, it
23 may, when considered with limitations or restrictions due to other impairments, be critical
24 to the outcome of a claim. *Id.* As obesity is not a separately listed impairment, a plaintiff will
25 be deemed to meet the requirements if "there is an impairment that, in combination with
26 obesity, meets the requirements of a listing." *Burch v. Barnhart*, 400 F.3d 676 at 682. (*citing*
27 SSR 02-01p (2002)).

28

- 10 -

1    An ALJ will not make assumptions about the severity or functional effects of obesity
2 combined with other impairments but will evaluate each case based on the information in the
3 case record. *Burch*, 400 F.3d at 682. Here, the record does not indicate that Plaintiff's obesity
4 exacerbated her other impairments. *Id.* There was no evidence before the ALJ, or in the
5 record, which states that Plaintiff's obesity limits her functioning. Neither treatment notes
6 nor any diagnoses addressed Plaintiff's limitations due to obesity. The medical record is silent
7 as to whether and how Plaintiff's obesity might have exacerbated her condition. Moreover,
8 Plaintiff did not present any testimony or other evidence at her hearing that her obesity
9 impaired her ability to work. Even on appeal, Plaintiff has not pointed to any evidence of
10 functional limitations due to obesity which would have impacted the ALJ's analysis. In fact,
11 the only evidence in the record relating to her obesity are notes from doctors who observed
12 weight gain, indicated that Plaintiff is obese, and recommended that she lose weight. *Id.*

13    The ALJ fully and fairly develops the record in regards to Plaintiff's obesity. The ALJ
14 assumes Plaintiff's obesity without Plaintiff presenting evidence of such an impairment. The
15 ALJ notes Plaintiff's obesity four times within his decision and tracks Plaintiff's weight. (AR
16 at 33-35.) The ALJ discredits the effects and severity of Plaintiff's obesity with substantial
17 evidence, explaining that obesity is a mild condition and is not supported by significant
18 findings. (AR at 35.) The Court finds that Plaintiff's obesity was properly considered and
19 accounted for in assessing the Plaintiff's RFC.

20 **Migraine Headaches**

21    In contrast to the ALJ's consideration of Plaintiff's obesity, the ALJ did not properly
22 consider Plaintiff's migraine headaches. In Social Security cases, when a disability benefits
23 claimant is not represented by counsel, it is incumbent upon the ALJ to scrupulously and
24 conscientiously probe into, inquire of, and explore all of the relevant facts, proceeding in a
25 manner that is especially diligent in insuring that favorable as well as unfavorable facts and
26 circumstances are elicited. *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978). For example,
27 Plaintiff did not testify as to her obesity, however, the ALJ nonetheless considered it and
28 referenced it. Despite the fact that the record reflects notes from three different treating

physicians pertaining to migraines, the ALJ, fails to address in his opinion migraines or the possible effects migraines may have on other impairments.

More specifically, Dr. Romero states that Plaintiff has blurred tunnel vision and is unable to work during migraine episodes. (AR at 154 and 137). Dr. Salazar-Calderon made an assessment of migraine headaches on two different occasions and prescribed Darvocet and Ativan for treatment.(AR at 259, 263.) Dr. Kalyanam, also a treating physician, cites Plaintiff's migraine headaches as a secondary diagnosis in 2004. (AR at 232, 241.) Plaintiff herself acknowledges the severity of her migraine headaches and makes note of how they have gotten worse with age. (AR at 104, 105, 214.)

The ALJ need not accept the opinion of a treating physician if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas*, 278 F.3d at 957. The opinion of three treating physicians, speaking to Plaintiff's migraine headaches, should have been considered, and if not considered, the ALJ must present clear and convincing reasons for rejecting the uncontroverted opinion of a claimant's physician. *Thomas*, 278 F.3d at 957. At a minimum the ALJ must provide a specific, legitimate reason, supported by substantial evidence, as to why he rejected the opinions of the treating physicians. *Magallanes*, 881 F.2d at 751. Therefore, because the ALJ failed address Plaintiff's migraine headaches this case will be remanded for further consideration.[13]

**The Lay Witness Testimony**

---

[13]The ALJ was to address Plaintiff's migraine headaches at step two of the five step disability analysis. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). Step two is "a de minimis screening device [used] to dispose of groundless claims," and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. Thus, applying the normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Plaintiff did not have a medically severe impairment or combination of impairments, when considering Plaintiff's migraines. *Webb*, 433 F.3d at 687. The record includes evidence of problems caused by Plaintiff's migraine headaches sufficient to pass the de minimis threshold of step two.

1  Plaintiff contends that the ALJ erred by failing to assist with the development of her 2 daughter's testimony and for failing to provide reasons for rejecting said testimony. The 3 Court finds that despite the fact that the ALJ may have failed to develop such testimony, 4 rejecting the testimony was not in error.

5  Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must 6 take into account *unless* he expressly decides to disregard such testimony and gives reasons 7 germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). 8 Inconsistency with medical evidence is considered a valid reason to disregard lay testimony. 9 *Lewis*, 236 F.3d at 511. In finding that the medical record is inconsistent as to Plaintiff's back 10 pain, the lay witness's testimony, speaking only to Plaintiff's back pain, is inconsistent with 11 the medical record. By properly discounting the credibility of Plaintiff, the ALJ can properly 12 reject the lay witness testimony that purported to bolster that credibility. *See Bayliss v.* 13 *Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (permitting ALJ to reject lay witness 14 testimony that conflicts with other evidence). The testimony of Plaintiff's daughter merely 15 bolstered Plaintiff's subjective complaints of back pain and the severity thereof (AR 286- 16 287), which conflicted with the record and the ALJ's determination of Plaintiff's credibility 17 based on the record. Therefore, the ALJ properly disregarded the lay testimony.

18 **III.    Hypothetical Presentation**

19  The hypothetical(s) posed to the vocational expert (VE) properly included all of 20 Plaintiff's impairments. For the testimony of a VE to be considered reliable in a Social 21 Security proceeding, the hypothetical posed must include all of the claimant's functional 22 limitations, both physical and mental, that are supported by the record. *Thomas*, 278 F.3d 23 947. In the present case the hypotheticals presented to the VE included an individual of the 24 same age, education, work experience, and same physical limitations as Plaintiff. Five 25 hypotheticals were posed which provided scenarios that included Plaintiff's impairments as 26 determined by DDS, impairments that would limit activity to sedentary activity, and 27 impairments that would prevent Plaintiff from performing work in an eight hour day for more 28 than four days per month. The hypotheticals included all of Plaintiff's alleged impairments

1 which would have affected the VE's testimony. Therefore, because the hypotheticals posed
2 raised all of Plaintiff's impairments, the hypothetical questions were proper[14]. Therefore, the
3 Motions for Summary Judgment are denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 11) is **DENIED**.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 15) is **DENIED**.

**IT IS FURTHER ORDERED** that the case be **REMANDED** for further review.

DATED this 10th day of July, 2007.

Stephen M. McNamee
United States District Judge

---

[14] It is noted that because the ALJ found that none of Plaintiff's impairments were severe the testimony of a VE was not needed. *Mathews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).